NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1545
_____

UNITED STATES OF AMERICA

v.

STEPHEN GARVEY, a/k/a/ Bigga

STEPHEN GARVEY,
                                        Appellant
_____

On Appeal from the District Court of the
Virgin Islands
(D.C. No. 1-10-cr-00009-001)
District Judge:  Hon. Raymond L. Finch
_____

Submitted under Third Circuit L.A.R. 34.1(a)
December 9, 2014

Before:  CHAGARES, JORDAN and SHWARTZ, *Circuit Judges*.

(Filed: December 16, 2014)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Stephen Garvey challenges his conviction for drug offenses. He specifically contends that the District Court of the Virgin Islands erred in denying his motion for acquittal or a new trial and his motion to suppress evidence, and that, for purposes of calculating his sentence, it erred in ruling that he was not entrapped. His arguments are unpersuasive, and we will affirm.

## I. Background

### A. Mail-Order Marijuana

In late 2008, Abraham Licon mailed six parcels containing marijuana from El Paso, Texas, to Christopher Jacobs in Atlanta, Georgia. In January 2009, at Jacobs's direction, Licon sent a seventh parcel, this time to St. Croix, containing approximately 25 pounds of marijuana.

On January 30, 2009, James Semrick, an agent with the Drug Enforcement Administration (DEA), learned of the last parcel. He sought the assistance of United States Postal Inspector Steve Stebbins, who informed him that the parcel would be delivered to Mailboxes 'N More in St. Croix on January 31, 2009. Stebbins also shared with Semrick a copy of the parcel's shipping label, which listed "Luis Castillo" as the intended recipient. (App. at 399, 500.)

On the designated date, Semrick set up visual surveillance of Mailboxes 'N More and awaited delivery of the parcel. At 11:30 a.m., Garvey made his appearance. The surveillance team observed him conversing with Daren Henry, the owner of Mailboxes 'N More. During the conversation, Garvey told Henry that he was expecting a parcel

2

from his uncle.  He gave Henry a tracking number to identify the parcel and requested notification when it arrived.

As requested, a worker at Mailboxes 'N More called Garvey when the parcel was there.  Garvey told the worker that he would send "Lando" to pick it up.  At about 1 p.m., Orlando Carino arrived at Mailboxes 'N More, picked up a large box, exited the store, and placed it in the rear of his vehicle.  Following as Carino drove away, Semrick eventually pulled him over.  With Carino's consent, Semrick searched Carino's vehicle and found the parcel, which, with the tracking number that Stebbins had provided, Semrick verified was the one addressed to Luis Castillo.  Then, again with Carino's consent, Semrick opened the parcel and found two five-gallon buckets containing marijuana sealed in Saran Wrap and packaged in El Paso Times newspaper.

At trial, Stebbins testified that parcels requiring delivery confirmation are labeled with unique tracking numbers that enable customers to track on the internet where their parcels are in the mail stream.  He also testified that, using a reverse internet protocol search system, postal inspectors can detect which internet protocol ("IP") address has been used to track a particular package.  After employing such a search, Stebbins learned that IP address 208.84.199.158, the address which was assigned to Garvey's computer, was used nine times to track the parcel delivered to Mailboxes 'N More on January 31, 2009.

### B.    *Marijuana Negotiations*

In mid-2009, Licon agreed to work as a confidential informant for the DEA. In that capacity, he introduced Jacobs to "Ramon," who was supposedly a drug dealer but actually was Omar Chavarria, an undercover agent for the DEA.

In his role as a drug dealer, Chavarria made several recorded calls to Jacobs and discussed the sale of marijuana. For example, during a different recorded conversation between Garvey, Jacobs, and Chavarria, Jacobs suggested that Chavarria ship ten-pound packages of marijuana to various Virgin Islands addresses that Jacobs and Garvey would provide. The parties agreed on that plan, and Jacobs promised to transport a cash payment for Chavarria to El Paso. During subsequent conversations, Garvey indicated that he was looking for approximately 200 pounds of marijuana and that he intended to smuggle it into St. Croix. On October 15, 2009, Chavarria met Jacobs in person to discuss that marijuana transaction. Initially, Chavarria and Jacobs were not able to agree on terms, but, after Jacobs spoke with Garvey on the phone, Jacobs and Garvey agreed to purchase 200 pounds of marijuana from Chavarria.

### C.    *The Wiretap*

The DEA commenced a wiretap investigation on October 26, 2009, targeting Garvey, Jacobs, Carino, and other individuals. After monitoring two of Garvey's telephone lines, Semrick learned of a parcel believed to contain marijuana that had been sent from Dallas, Texas, to 354 Peter's Rest in St. Croix. Garvey had previously used that address to register his pickup truck. At Semrick's request, Stebbins removed the

4

package from the delivery system. A search of the parcel revealed that it contained approximately ten pounds of marijuana.

Agents surveilled 354 Peter's Rest on November 4, 2009, to see who would try to retrieve the parcel. That same day, agents intercepted a call from Garvey to David Roland in which Garvey said, "yeah, just cool out by the tree," which was significant to Semrick since there was a large tree near the entrance of the Peter's Rest property. (*Id.* at 969-70.) During a subsequent call, Roland told Garvey that a postal van had come to the neighborhood but had not dropped a package off at 354 Peter's Rest. In response, Garvey placed several calls to the post office inquiring about the undelivered package. During one of those calls, Garvey gave the same parcel tracking number as the one that appeared on the parcel that Stebbins had seized at Semrick's request.

### D. Trial and Sentencing

Garvey was charged in an eight-count indictment. Ultimately, Counts I, IV and VIII all proceeded to trial but Count VIII was dismissed at the close of the government's case. In Count I, Garvey was charged with Conspiracy to Possess and Distribute Controlled Substances, in violation of 21 U.S.C. § 846. In Count IV, Garvey was charged with Possession of Marijuana with Intent to Distribute, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(D). The jury convicted him on both counts. By special interrogatory, it found that 305 pounds of marijuana were attributable to Garvey. He filed a motion for acquittal or a new trial, which the District Court denied.

At sentencing on March 7, 2014, Garvey argued that he was entrapped when he agreed to purchase 200 pounds of marijuana from Chavarria. The crux of his argument

5

was that, while he may have been willing to purchase some marijuana from Chavarria, it was Chavarria who pushed for such a large quantity. The District Court concluded that there was nothing in the record that supported a finding of sentencing entrapment. Garvey timely appealed.

## II.   Discussion[1]

Garvey advances three arguments on appeal: first, he claims that the evidence presented at trial was insufficient to sustain his convictions under Count I; second, that the District Court erred in denying his motion to suppress evidence obtained by wiretap; and third, that he was lured by the government into trying to purchase a large shipment of marijuana. We address each argument in turn.

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

A.    *Motion for Judgment of Acquittal or a New Trial*[2]

The essential elements of a drug distribution conspiracy under 21 U.S.C. § 846

are: "(1) a shared unity of purpose, (2) an intent to achieve a common illegal goal, and

(3) an agreement to work together toward the goal, which [the defendant] knowingly

joined." *United States v. Boria*, 592 F.3d 476, 481 (3d Cir. 2010).  "The elements of

conspiracy … can be proven entirely by circumstantial evidence." *United States v.*

*Brodie*, 403 F.3d 123, 134 (3d Cir. 2005).  "Since conspiracy is a continuing offense, a

defendant who has joined a conspiracy continues to violate the law 'through every

moment of [the conspiracy's] existence,' and he becomes responsible for the acts of his

co-conspirators in pursuit of their common plot." *Smith v. United States*, 133 S. Ct. 714,

719 (2013) (citations omitted) (alteration in original).  Furthermore, the government need

not prove that each defendant knew all the details or goals of the conspiracy or the

_____

[2] In reviewing a motion for judgment of acquittal, we view the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt.  *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) (internal quotation marks omitted).  Under this particularly deferential standard, we "must be ever vigilant ... not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [our] judgment for that of the jury." *Id.*  Furthermore, "we review the evidence as a whole, not in isolation, and ask whether it is strong enough for a rational trier of fact to find guilt beyond a reasonable doubt." *United States v. Boria*, 592 F.3d 476, 480 (3d Cir. 2010).  We must sustain the jury's verdict "if there is substantial evidence, viewed in the light most favorable to the government, to uphold the jury's decision." *United States v. Gambone*, 314 F.3d 163, 170 (3d Cir. 2003) (internal quotation marks omitted).

We review a district court's decision on a motion for a new trial for abuse of discretion. *United States v. Jasin*, 280 F.3d 355, 360 (3d. Cir. 2002).  A new trial is warranted if the jury's verdict is contrary to the weight of the evidence and if "there is a serious danger that a miscarriage of justice has occurred – that is, that an innocent person has been convicted." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002) (internal quotation marks omitted).

identity of all participants involved in the conspiracy to establish that a conspiracy existed. *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999).

The elements of the substantive offense of possession with intent to distribute a controlled substance are that the defendant knowingly possessed a controlled substance and did so with the intent to distribute it. *United States v. Iglesias*, 535 F.3d 150, 156 (3d Cir. 2008). "When a defendant is found in possession of a sufficiently large quantity of drugs, an intent to distribute may logically be inferred from the quantity of drugs alone." *United States v. Rodriguez*, 961 F.2d 1089, 1092 (3d Cir. 1992). The jury is only required to find the drug type and quantity as to the conspiracy as a whole, not on a defendant-specific basis. *United States v. Phillips*, 349 F.3d 138, 142-43 (3d Cir. 2003), *overruled on other grounds*, *Barbour v. United States*, 543 U.S. 1102 (2005).

As to his conviction on Count I, Garvey offers a series of disconnected assertions to support his contention that the evidence presented at trial was insufficient to prove the existence of a single conspiracy. First, he references Count VIII of the indictment, which alleges that, on or about September 9, 2009, he possessed with intent to distribute 10 pounds of marijuana. That count was dismissed, and Garvey reasons that those 10 pounds of marijuana cannot count towards the total weight measurement required to find him guilty under Count I. Notwithstanding the dismissal of Count VIII, however, he could still be found guilty for *conspiring* to possess with intent to distribute those 10 pounds of marijuana under Count I.[3]

---

[3] Moreover, it is permissible to consider such conduct for sentencing purposes where the amount is established by a preponderance of the evidence. *See, e.g.*, *United*

8

Garvey also asserts that "[t]he only evidence that came close to possession of marijuana was the 25 pounds intercepted by law enforce [sic] on or about January 31, 2009, 10 pounds on or about November 4, 2009, and the government agents [sic] scheme to give defendant Garvey 200 pounds on credit." (Appellant's Br. at 19.) But, in fact, the statutes under which Garvey was convicted requires only that he conspired to possess with intent to distribute 100 kg (220 pounds) of marijuana. 21 U.S.C. §§ 841(b)(1)(B)(vii) & 846. Therefore, based on Garvey's acknowledgment that certain criminal conduct covered by Count I together with other evidence from which a rational juror could conclude that 235 pounds of marijuana is attributable to him, there is sufficient evidence to affirm his conviction on Count I.

Second, in a conflation of arguments on the substantive and conspiracy offenses, Garvey asserts that Count IV, which charged him with possession with intent to distribute 25 pounds of marijuana on January 31, 2009, was not part of the conspiracy because the government only presented evidence at trial that he tracked the package on the internet and asked one of his codefendants about it. His position is that, because Henry denied knowledge of the drugs at trial, and because a codefendant (Jacobs) was not charged with that offense, and because another codefendant (Carino) was acquitted of that offense, the evidence shows, at most, a separate and distinct conspiracy, not one connected with the criminal conduct covered by Count I.

---

*States v. Watts*, 519 U.S. 148, 157 (1997); *United States v. Baird*, 109 F.3d 856, 864 (3d Cir. 1997).

That argument fails for two reasons. It fails in its premise because the evidence presented at trial supports the conclusion that he constructively possessed 25 pounds of marijuana on January 31, 2009. Our case law holds that a finding of guilt based on constructive possession "requires both dominion and control over an object and knowledge of that object's existence." *United States v. Brown*, 3 F.3d 673, 680 (3d Cir. 1993) (internal quotation marks omitted). We have further held that the terms "dominion and control" are to be interpreted "as the ability to reduce an object to actual possession." *United States v. Martorano*, 709 F.2d 863, 869 (3d Cir. 1983). Because the testimony presented at trial showed that Garvey was able to direct Carino's actions and that Carino actually possessed 25 pounds of marijuana, the record supports the conclusion that Garvey constructively possessed the 25 pounds of marijuana. Moreover, Garvey's argument fails in its reasoning because it is simply a non-sequitur. None of his assertions about the 25 pounds at issue in Count IV undermine the jury's conclusion that Garvey's efforts to acquire those drugs were part of a larger conspiracy.

The third argument Garvey presents is closely related to the second. He insists that the evidence presented at trial was insufficient for the jury to find him guilty on Count I because, at most, the government proved the existence of multiple, unrelated conspiracies – not a single conspiracy involving all of the defendants and all of the drug-related transactions – to traffic and possess marijuana. His argument relies primarily on *Kotteakos v. United States*, 328 U.S. 750 (1946), in which the Supreme Court held that multiple distinct conspiracies, though they involved the same central criminal facilitator, could not be charged as one large conspiracy. *Id.* at 768-74.

10

Again, his reasoning is flawed. The government was not required to prove that each defendant knew all the details or goals of the conspiracy or even the identity of all participants to establish that a conspiracy existed. *Gibbs*, 190 F.3d at 197. Instead, the government was required to prove that the defendants shared a unity of purpose, that they intended to possess and distribute marijuana, and that Garvey knowingly joined the conspiracy. *United States v. Claxton,* 685 F.3d 300, 305 (3d Cir. 2012). Moreover, the facts undergirding the Supreme Court's holding in *Kotteakos* are easily distinguishable from the facts presented here. The evidence at Garvey's trial portrayed a cohesive conspiracy involving a handful of individuals, including Garvey, who worked together to acquire marijuana from locations in Texas and Georgia, which they then distributed elsewhere, including in the Virgin Islands. In contrast, the indictment in *Kotteakos* named 32 defendants as members of a single conspiracy, but while the 32 individuals allegedly engaged in similar criminal conduct, they had no connection to one another apart from contact with a common criminal facilitator. *Kotteakos*, 328 U.S. at 754-55, 766. Because *Kotteakos* presents a wholly different factual environment than that involved in this case, it does not support Garvey's argument.[4]

---

[4] In Garvey's brief, he also appears to assert that, much like Chavarria, who merely posed as a drug dealer when he offered to sell Garvey 200 pounds of marijuana, Garvey too was just "portraying the role" of an individual interested in purchasing marijuana. (Appellant's Br. at 16.) While that may have been a possible – albeit highly improbable – inference from the evidence presented at trial, it does not convince us that the jury acted irrationally in concluding that he was doing more than just pretending to be a drug trafficker.

Consistent with our discussion above, we conclude that the jury's verdict is not contrary to the weight of the evidence and that the District Court did not abuse its discretion in denying Garvey's motion for a new trial.

B.      *Motion to Suppress Wiretap Evidence*[5]

Pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.*, wire, oral, and electronic communications may be intercepted by law enforcement on a showing that there is probable cause that (1) an individual is committing a particular offense; (2) that relevant communications will be obtained through the interception; and (3) that the premises where the interception will be made are being used in connection with the charged offense.  18 U.S.C. § 2518(3).  In addition, a wiretap application must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  *Id*. § 2518(1)(c).  Thus, in order to lawfully grant an application for a wiretap, the issuing judge must find a wiretap to be necessary, which requires that the application explain why "normal investigative techniques would be of no avail."  *United States v. Hendricks*, 395 F.3d 173, 180 (3d Cir. 2005) (internal quotation marks and citation omitted).

---

[5] We exercise de novo review to determine whether the application for the wiretap contained the requisite statement regarding the necessity of the wiretap, and, if we determine such a statement is present, we review for abuse of discretion the District Court's determination of necessity.  *United States v. Phillips*, 959 F.2d 1187, 1189 (3d Cir. 1992).

Garvey contends that the District Court erred in refusing to suppress evidence obtained via the wiretap because the wiretap application and affidavit relied on "boilerplate jargon" and did not explain why traditional law enforcement methods would have failed, and, therefore, they did not establish that the wiretap was necessary.[6] (Appellant's Br. at 23.) But Garvey does not point to any statements in or omissions from the application to support his position, and, after reviewing the affidavit, we cannot agree with him. The affidavit was prepared in detail, recounting several examples of investigative methods that were or could be attempted and why those methods were or would be ineffective. In the affidavit, Semrick described the physical surveillance of Garvey and his associates, a prior search of Garvey's residence, the use of administrative subpoenas of email and cellular phone accounts, the attempted use of a GPS tracker, the monitoring of pen registers and toll records, interviews with Garvey's associates, and the use of confidential informants and an undercover agent. He also explained why those techniques had limited success and why others that were not tried would not be successful. We have no difficulty concluding that the District Court did not abuse its discretion in determining that the affidavit supported a finding of necessity.

---

[6] Garvey also contends that the wiretap application did not establish probable cause to intercept his communications. That, however, is nothing more than a naked conclusion, unsupported by facts or arguments demonstrating why probable cause was lacking. We will not address undeveloped legal assertions. *United States v. Dupree*, 617 F.3d 724, 728 (3d Cir. 2010).

## C.    *Sentencing Entrapment*

Finally, Garvey contends that the District Court erred when it refused to grant a downward departure at sentencing on the basis of alleged sentencing entrapment.  He appears to argue that Agent Chavarria entrapped him for purposes of sentencing by coaxing him to purchase a much larger quantity of marijuana – 200 pounds – than he would otherwise have done.  Here, the District Court stated, "I cannot find anything in the record that would allow me to conclude that there was sentencing entrapment.  I don't think it exists here."  (App. at 1374.)

Sentencing entrapment is said to occur when government conduct leads a defendant who is not otherwise so disposed to deal in a large quantity or a particular type of controlled substance, and the result is a higher sentence.  *United States v. Martin*, 583 F.3d 1068, 1073 (8th Cir. 2009).  "We have neither adopted nor rejected the doctrine[] of sentencing entrapment … ."  *United States v. Sed*, 601 F.3d 224, 229 (3d Cir. 2010).  Even if we were to recognize that doctrine, however, "[i]t is well-established in this Court that we lack jurisdiction to review the merits of a district court's discretionary decision to refuse a downward departure under the Sentencing Guidelines once we determine that the district court properly understood its authority to grant a departure."  *United States v. Minutoli*, 374 F.3d 236, 239 (3d Cir. 2004); *see also United States v. Isaac,* 655 F.3d 148, 158 (3d Cir. 2011) ("[I]n contrast to determining whether a sentence is reasonable, appellate courts lack jurisdiction over the merits of a district court's discretionary decision not to depart downward from the Guidelines once it is determined that the district court properly understood its authority to grant a departure.").

14

The District Court's response to Garvey's argument for a downward departure is sufficient to establish that the Court understood it had the authority to address the departure but chose not to grant it, and thus we have no jurisdiction to review the merits of that decision.[7]

**III.   Conclusion**

For the reasons noted, we will affirm the judgment of the District Court.

---

[7] Even if we assumed that we had jurisdiction, nothing in the record suggests that sentencing entrapment occurred in this case. In fact, Chavarria testified at trial that Garvey told him that he and his codefendants were "looking for about 200 [pounds of marijuana]." (App. at 102, 764.) Thus, contrary to Garvey's claims, the record evidence supports the conclusion that Garvey was predisposed to deal in large quantities of marijuana.