Filed 4/17/15  P. v. Flores CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G049054 |
| v. | (Super. Ct. No. 10CF1723) |
| ADOLFO AGUILAR FLORES, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Lance Jensen, Judge.  Affirmed.

Susan K. Shaler, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Scott C. Taylor and Teresa Torreblanca,  Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted defendant Adolfo Aguilar Flores of four counts of molesting a child under 14 years of age. (Pen. Code, § 288, subd. (a); all undesignated statutory references are to the Penal Code.) The court sentenced defendant to 30 years to life and an additional 10 years in state prison. On appeal, defendant claims count four must be reversed because the corroboration required by section 803 was not proven beyond a reasonable doubt, the jury was misinstructed, and he received ineffective assistance of counsel. We find the prosecution was not required to prove beyond a reasonable doubt which statute of limitation applied, the jury was properly instructed and if they were not, any error was harmless. As defendant's ineffective assistance of counsel argument is based on counsel's failure to object to the instructions and we decided the merits of the instructional issues, there is no need to address the Sixth Amendment argument.

I

FACTS

The information charged defendant with four counts of a lewd act on a child under 14 years of age. (§ 288, subd. (a).) In count one, defendant was alleged to have touched El.'s vagina between January 2, 1996 and December 11, 1997, he was also alleged in count two to have touched Es.'s vagina between July 14, 1997 and July 13, 1999, in count three, to have touched Es.'s breast between June 15, 2001 and July 13, 2004, and in count four he was alleged to have digitally penetrated Y. between August 30, 1992 and August 29, 1994. The information alleged defendant engaged in substantial sexual conduct in counts one, two (§ 667.61, subds. (b), (e)(5)), and four (§ 1203.066, subd. (a)(8)), and that the statute of limitations on the offense charged in count four had been tolled and the matter prosecuted in a timely fashion in compliance with section 803, subdivision (f)(1).

2

Defendant and his wife have eight children, including each of the named victims. Es., El., and Y. were each under 14 years of age when molested by defendant. Defendant was abusive to his wife. She wears dentures because he hit her and knocked out her teeth shortly after they married in 1980. The children have seen defendant hit their mother. His wife has seen him hit a number of the children.

A. *Count One—El. (Touching Vagina)*

El. was in her late 20's at the time of trial. When she was in the fifth grade, she woke up once because someone was touching her vagina. She awoke and saw defendant with his hand inside her pajamas, but outside her panties, "caressing [her] private part." She asked defendant what he was doing and he said, "Nothing." El. was angry and started crying. She did not tell anyone what happened because she was afraid defendant would hit her or beat up her mother.

As she got older, defendant would drive El. to school and touch her thighs while he drove. According to El., once she started growing breasts, she woke up one morning to defendant touching her breasts.

At one point when El. was 16 or 17 years old, she told her mother what happened. Her mother confronted defendant and they got into a big fight, but nothing changed. El. confronted defendant about the molestation when she was 24 years old. Defendant said he was sorry and that he had been molested as a child. El. reported defendant's actions to the police on June 24, 2010.

B. *Counts Two & Three—Es. (Touching Vagina and Touching Breast)*

Es. was 20 years old at the time of trial. When she was five or six years old, defendant entered the room where she was sleeping one night, lifted her nightgown, spread her legs apart, and touched the outer portion of her vagina with his hand. She did

3

not tell anyone because she was afraid. When she was nine or 10 years old, Es. was sleeping on the top bunk bed when defendant opened her shorts and rubbed the outside of her vagina with his hand.

Once, when Es. was 11 years old, she was sweeping in the living room when defendant walked up behind her and put his hands on her breasts, squeezed them, and said, "They're growing, aren't they?" His hands were on the outside of her clothing. She initially did not tell anyone about this incident either because of her fear, but she went to the police with El. in 2010 and reported the incident.

## C. *Count Four—Y. (Digital Penetration)*

Y. was 25 years old at the time of trial. She was living in Washington in March 2011, when she received a telephone call from a Santa Ana Police Department detective. The detective asked her about some incidents that occurred with her father when she was a child. Prior to then, Y. had never told law enforcement about the incident.

When Y. was in kindergarten in Santa Ana, she slept on the top bunk bed in the living room. On a night when she wore a T-shirt and shorts to bed, she woke up and saw defendant's head "right next to" hers. He put his fingers inside her underwear. He touched the outside of her vagina and then penetrated her vagina with his fingers. After a minute or two he stopped and told Y. to go back to sleep. She said he did something similar on another occasion while she was either in kindergarten or first grade. On that occasion, Y. was sleeping on the bottom bunk bed. Defendant reached over from the bed next to the bunk bed and put his hand inside her underwear, touching the outside of her vagina and then penetrating her.

Y. also recounted a time in the first grade when she went inside the apartment after playing. Defendant grabbed her from behind and moved his fingers down to her waist, and then inside her underwear to the outside of her vagina.

Y. graduated from the eighth grade in 2001. She remembers she wore a blue dress that day and defendant touched her hips and waist, stating he likes girls with nice figures.

D. *Evidence Admitted Pursuant to Evidence Code Section 1108*

E. was 31 years old at the time of trial. She is the oldest of defendant's children. One night when she was nine years old, she was asleep and awoke to find defendant on top of her. She felt something she had never felt before; his penis was inside of her. Defendant signaled E. with his hand to be quiet.

Some time thereafter, the family lived on the street in defendant's van. One night while she was sleeping in the van, E. again awoke to find defendant on top of her with his penis inside of her. E. also testified to a third incident that occurred when they were living in a one-bedroom apartment. This time she was asleep on her stomach in the living room. She felt defendant on top of her. He had pulled down her underwear and penetrated her vagina with his penis.

The victims' brother F., who was 30 year old at the time of trial, testified that when he was 11 years old he was in bed asleep and was awaken by an adult male "humping" him. Defendant was the only adult male in the house and F. was the only boy. F. did not open his eyes and cried himself to sleep when the incident was over.

The family moved to Washington at one point. A family meeting with a pastor from the church was arranged to see if defendant would "confess or accept his . . . bad behavior." F. said that during the meeting, defendant admitted molesting E., but said he did not remember molesting Es.

5

E. *Defendant's Recorded Statement*

Defendant was interrogated after his arrest and after being advised of and waiving his *Miranda*[1] rights. When asked if he had touched his daughters' vaginas, he said he did "like a father, like a dad not, not like a man." According to defendant, his daughters misinterpreted his actions. He admitted the touching was "skin-to-skin," but denied doing it while his daughters were asleep. He said his hand merely passed over their vaginas while he talked to them. He denied ever touching their breasts.

F. *Defense*

Defendant testified in his own defense. He denied touching his children in a sexual way. He admitted hitting his wife once because she did not obey him and was not behaving properly, as well as hitting her when she would not feed him. He also admitted hitting his children when reprimanding them. He said the officer who interrogated him spoke broken Spanish and he did not really understand her.

G. *Verdict and Sentence*

The jury found defendant guilty of each of the charged offenses and found true each of the special allegations. The court found defendant ineligible for probation (§ 1203.066, subd. (a)(8)), sentenced him to 15 years to life on count one, a consecutive term of 15 years to life on count two, a consecutive term of eight years on count three and a consecutive two-year term (one-third the midterm) on count four. The court awarded defendant 870 days of presentence credits, and ordered him to register as a sex offender.

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436.

DISCUSSION

Defendant's challenges on appeal all relate to his conviction on count four, the offense against Y. In his first challenge, he claims his conviction must be set aside because the statute of limitations expired prior to the filing in this matter and the prosecution did not prove beyond a reasonable doubt the corroboration necessary to extend the statute of limitations in this instance.

A. *Statute of Limitation*

Defendant was charged in count four with a lewd act on his daughter Y. who was under 14 years of age at the time of the incident in 1992 or 1993. (§ 288, subd. (a).) Because a violation of section 288, subdivision (a) is punishable by a maximum sentence of eight years in prison, section 800 requires the prosecution to file charges within six years of the offense. "Except as provided in Section 799, prosecution for an offense punishable by imprisonment in the state prison for eight years or more or by imprisonment pursuant to subdivision (h) of Section 1170 for eight years or more shall be commenced within six years after commission of the offense." (§ 800.)

The offense charged in count four was not charged in the original complaint. The charge was added by the amended complaint filed at the end of March 2011. The six-year period set forth in section 800 expired prior to the filing of the amended complaint. However, section 803, subdivision (f)(1) provides a limited extension to the applicable statute of limitation: "Notwithstanding any other limitation of time described in this chapter, a criminal complaint may be filed within one year of the date of a report to a California law enforcement agency by a person of any age alleging that he or she, while under 18 years of age, was the victim of a crime described in Section

261, 286, 288, 288a, 288.5, or 289, or Section 289.5, as enacted by Chapter 293 of the Statutes of 1991 relating to penetration by an unknown object." (§ 803, subd. (f)(1).)

For subdivision (f)(1) of section 803 to extend the applicable statute of limitation, three conditions must be met. First, "[t]he limitation period specified in Section 800, 801, or 801.1, whichever is later, has expired." (§ 803, subd. (f)(2)(A).)[2] Next, "[t]he crime involved substantial sexual conduct, as described in subdivision (b) of Section 1203.066, excluding masturbation that is not mutual." (§ 803, subd. (f)(2)(B).) Lastly, there must be "independent evidence that corroborates the victim's allegation. If the victim was 21 years of age or older at the time of the report, the independent evidence shall *clearly and convincingly* corroborate the victim's allegation." (§ 803, subd. (f)(2)(C), italics added.)

Defendant contends the Fifth and Fourteenth Amendment of the United States Constitution require the prosecution to prove beyond a reasonable doubt the four elements triggering section 803, subdivision (f)(1)'s application, and his conviction on count four must be reversed because the prosecution was not required to prove the application of section 803, subdivision (f)(1) by proof beyond a reasonable doubt. Citing *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490, he argues a defendant cannot be convicted of an offense unless the prosecution proves every fact necessary to the conviction beyond a reasonable doubt.

In *Apprendi*, the high court held: "Other than the fact of a prior conviction, *any fact that increases the penalty for a crime beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi v. New*

---

[2] Section 800 provides a six-year statute of limitations for offenses carrying a maximum penalty of eight or more years. Section 801 provides a three-year statute of limitation for offenses punishable by imprisonment in the state prison. Section 801.1 did not exist in 1992 and 1993.

*Jersey*, *supra*, 530 U.S. at p. 490, italics added.)  This language does not include statute of limitations issues.  The extension of the time for prosecution under section 803 does not increase a defendant's punishment.  (*People v. Betts* (2005) 34 Cal.4th 1039, 1054; *People v. Linder* (2006) 139 Cal.App.4th 75, 85.)  Therefore, *Apprendi* does not compel the conclusion the three facts necessary to trigger section 803's extension of the applicable statute of limitation must be proven by proof beyond a reasonable doubt.

We have not been pointed to any Supreme Court opinion holding a statute of limitation must be proven beyond a reasonable doubt by the prosecution, and we have found none.  However, in *Smith v. United States* (2013) __ U.S. __ [133 S.Ct. 714], the defendant was convicted of conspiracy to distribute narcotics.   (*Id*. at p. __ [133 S.Ct. at p. 717].)  The conspiracy purportedly lasted "for about a decade." (*Ibid*.)  The court described the issue on appeal as follows:  "Upon joining a criminal conspiracy, a defendant's membership in the ongoing unlawful scheme continues until he withdraws. A defendant who withdraws outside the relevant statute-of-limitations period has a complete defense to prosecution.  We consider whether, when the defendant produces some evidence supporting such a defense, the Government must prove beyond a reasonable doubt that he did not withdraw outside the statute-of-limitations period." (*Ibid*.)[3]

The issue in *Smith* is analogous to the issue raised in the present appeal.  In *Smith*, the question was whether the prosecution had to prove beyond a reasonable doubt the defendant did not withdraw from the conspiracy outside the statute of limitation once there was some evidence of withdrawal outside the applicable statute of limitation.  In the present case, there is evidence the presumptive statute of limitation expired (§ 800) and,

_____

[3]  Withdrawal "starts the clock running on the time within which the defendant may be prosecuted, and provides a complete defense when the withdrawal occurs beyond the applicable statute-of-limitations. [Fn. omitted.]" (*Smith v. United States*, *supra*, __ U.S. at p. __ [133 S.Ct. at p. 719].)

therefore the question is the extent of the prosecution's burden of proving the statute extending the time period in which prosecution could be initiated. (§ 803, subd. (f)(1).)

The defendant in *Smith* sought to dismiss the conspiracy count based on the "applicable 5-year statute of limitations." (*Smith v. United States*, *supra*, __ U.S. at p. __ [133 S.Ct. at p. 718].) In other words, the defendant contended he withdrew from the conspiracy more than five years earlier and therefore was no longer subject to prosecution for conspiracy. The Supreme Court described the *Smith* defendant's claim as laying "at the intersection of a withdrawal defense and a statute-of-limitations defense." (*Ibid.*) He contended that once he introduced some evidence he withdrew from the conspiracy more than five years prior, it became the prosecution's burden to prove beyond a reasonable doubt he participated in the conspiracy within the five years preceding the initiation of the prosecution. (*Id*. at pp. __ [133 S.Ct. at pp. 718-719].) In rejecting the defendant's position, the court noted that where a special defense like the expiration of the applicable statute of limitation "'excuse[s] conduct that would otherwise be punishable,' but 'does not controvert any of the elements of the offense itself,' the Government has no constitutional duty to overcome the defense beyond a reasonable doubt. [Citation.] (*Id*. at p. __ [133 S.Ct. at p. 719].) Just as withdrawal and the passage of time does not negate an element of the crime of conspiracy (*ibid.*), the passage of time does not negate an element of the crime of committing a lewd act on the body of a child under 14 years of age. In both instances, the passage of time merely excuses the conduct that occurred prior to the running of the applicable statute of limitation—i.e., the statute of limitation merely precludes conviction despite the evidence of each of the elements of the crime.

Because the application of a particular statute of limitation does not increase the maximum possible punishment, *Apprendi* does not require it be proven beyond a reasonable doubt. Moreover, because "[c]ommission of the crime *within the*

10

*statute-of-limitations period* is not an element of [a charged] offense" (*Smith v. United States*, *supra*, __ U.S. at p. __ [133 S.Ct. at p. 720]; accord *People v. Thomas* (2007) 146 Cal.App.4th 1278, 1286, disapproved on another ground in *People v. Shockley* (2013) 58 Cal.4th 400, 406; see also *People v. Ruiloba* (2005) 131 Cal.App.4th 674, 681 [prosecution must generally prove the charges were timely brought by a preponderance of evidence]), the prosecution is not required to prove *beyond a reasonable doubt* which statute of limitation applies.

## B. *Jury Instructions*

Defendant next argues that even if we reject his first argument, count four must still be reversed because the court erred in instructing the jury. He claims the court misstated the definition of clear and convincing evidence, the instructions given in connection with the statute of limitation issue were ambiguous and conflicting, and the court failed to adequately instruct on the meaning of corroboration.

We review de novo the propriety of the instructions given. (*People v. Guinan* (1998) 18 Cal.4th 558, 569.) Preliminarily, we note defendant did not object to the complained of instructions. Although the failure to raise an issue in the trial court will often result in the forfeiture of the issue on appeal (see, e.g., *People v. Zambrano* (2007) 41 Cal.4th 1082, 1139, overruled on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22), we may "review any instruction given . . . even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby." (§ 1259.) We address the issues notwithstanding defendant's failure to object because the instructions affect defendant's substantial rights.

### 1. *Clear and Convincing Evidence*

The court gave the following modified version of CALCRIM No. 3410 on clear and convincing evidence: "Clear and convincing evidence of the corroboration

11

means evidence of such convincing force that it demonstrates, in contrast to the opposing evidence, a high probability of the truth of the facts for which it is offered as proof. Such evidence requires a higher standard of proof than proof by a preponderance of evidence." Defendant claims this instruction was insufficient because it did not state "clear and convincing evidence denotes proof that is clear, explicit, and unequivocal and leaves no substantial doubt. [Citations.]" (See *People v. Yovanov* (1999) 69 Cal.App.4th 392, 402.) We disagree.

The instruction in this case followed the language in BAJI No. 2.62. (*People v. Mabini* (2001) 92 Cal.App.4th 654, 659.) As the court noted in *Mabini*, "If BAJI No. 2.62 is a correct instruction in civil actions, there is no compelling reason for applying a different standard of 'clear and convincing evidence' in jury instructions in criminal actions." (*People v. Mabini*, *supra*, 92 Cal.App.4th at p. 660.) After all, there is no reason to believe the Legislature intended *clear and convincing* to have one meaning in a civil action and a different meaning in a criminal matter. We conclude the instruction was proper. (*Id.* at p. 663 [BAJI No. 2.62 correctly defines "clear and convicincing"]; *Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 849.)

In addition to the instruction on clear and convincing evidence, the jury was instructed on preponderance of the evidence and proof beyond a reasonable doubt. The complained of instruction informed the jury the clear and convincing evidence standard is stricter than the preponderance of the evidence standard. Together, "[t]hese instructions adequately explained the meaning of 'clear and convincing evidence.'" (*People v. Mabini*, *supra*, 92 Cal.App.4th at p. 663.) Additionally, we agree with the *Mabini* court the version of the instruction defendant now urges should have been given is not substantially different from the definition of proof beyond a reasonable doubt. "'There is essentially no difference between requiring proof that "leaves no substantial doubt" . . .

and the criminal definition of reasonable doubt.' [Citation.]" (*Id*. at p. 662, quoting *Mattco Forge, Inc. v. Arthur Young & Co.*, *supra*, 52 Cal.App.4th at p. 849.)

"'Without an additional mandate from the Supreme Court or the Legislature, BAJI No. 2.62 remains a correct instruction. [Citation.]' [Citation.]" (*People v. Mabini*, *supra*, 92 Cal.App.4th at p. 663.) As the jury was instructed in the terms BAJI No. 2.62, we conclude the court correctly instructed the jury on the meaning of clear and convincing evidence.

2. *Requirement to Prove Corroboration*

The offense charged in count four, the offense involving Y., occurred outside the time frame set forth in section 800 and could be prosecuted only if the prosecution complied with section 803. As noted above (*ante*, p. 8), section 803 requires the prosecution to introduce "independent evidence that corroborates the victim's allegation." (§ 803, subd. (f)(2)(C).) Additionally, if the victim was 21 years of age or older when she first reported the incident, "the independent evidence shall clearly and convincingly corroborate the victim's allegation." (*Ibid*.) Defendant contends certain instructions given the jury were erroneous because they indentified impermissible methods of proving the required corroboration.

Pursuant to CALCRIM No. 301, the court instructed the jury, "(The) testimony of only one witness can prove any fact." The jury was also instructed, "Conviction of a sexual assault crime may be based on the testimony of a complaining witness alone." (CALCRIM No. 1190.) Defendant appears to agree these instructions were properly given in connection with counts one, two, and three. He contends the jury should have been instructed CALCRIM Nos. 301 and 1190 do not apply to Y.'s testimony because her testimony required corroboration. He points out that CALCRIM No. 301 contains a suggested revision that should have been used in this matter. "Except for the testimony of _____ <insert witness's name>, which requires supporting evidence

13

. . ." (CALCRIM No. 301) and argues CALCRIM No. 1190 should have been similarly modified.

We agree CALCRIM Nos. 301 and 1190 should have been modified given the fact one of the four charges (count four) required corroboration and thus could not have been proven by Y.'s testimony alone because section 803, subdivision (f)(2)(C) required it to be corroborated by clear and convincing evidence. The error, however, was harmless. There was abundant corroborating evidence in this matter. Moreover, the jury found much of it proven beyond a reasonable doubt. Given the fact that uncharged evidence of sexual misconduct admitted pursuant to Evidence Code section 1108[4] may satisfy the clear and convincing corroboration requirement of section 803 (*People v. Ruiloba*, *supra*, 131 Cal.App.4th at p. 682), evidence of other charged offenses involving other victims may satisfy the corroboration requirement. (*People v. Villatoro* (2012) 54 Cal.4th 1152, 1164.) "Whether an offense is charged or uncharged in the current prosecution does not affect in any way its relevance as propensity evidence." (*Ibid.*)

The jury convicted defendant of molesting his daughter El. while she was in elementary school. Like his molestation of Y., defendant molested El. at night when she was asleep in bed. Just as defendant woke Y. from her sleep and fondled her vagina, so too did he wake El. from her sleep and fondle her vagina. Additionally, the jury also convicted defendant of molesting another daughter, Es., when she was five or six years old. Just as he did with Y., defendant woke Es. from her sleep to fondle her vagina.

There was still more corroboration. There was evidence defendant molested yet another daughter, E., when she was in elementary school. E. was nine years old when she awoke to find defendant on top of her having intercourse. Shortly

---

[4] "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." (Evid. Code, § 1108, subd. (a).)

14

thereafter, when the family was homeless and living in a van, defendant again woke up E. by getting on top of her and having intercourse with her. He again had sex with her once they were back in an apartment, again climbing on top of her while she was asleep. Defendant did not molest only his daughters. He also climbed on top of his son who was 11 years old and "hump[ed]" him.

There was additional corroboration in the form of defendant's statements. He admitted to a church official he had molested E. and he admitted touching his daughters' vaginas skin-to-skin to the police, albeit he said he touched them like a father, not a man, and that he merely passed over their vaginas while talking to them.

Because much of the corroboration evidence consisted of testimony concerning other very similar molests the jury ultimately convicted defendant of committing, the jury necessarily found beyond a reasonable doubt evidence that corroborated Y.'s testimony. Accordingly, the failure to modify CALCRIM Nos. 301 and 1190 to state that the testimony of Y. alone is insufficient to sustain a conviction on count four was harmless because the jury found much of the corroborating evidence true beyond a reasonable doubt.

3. *Failure to Instruct on the Meaning of Corroboration*

Defendant next complains the trial court prejudicially erred in failing to instruct the jury on the meaning of corroboration. A trial court is not required to instruct on the definition of all words. "If a statutory word or phrase is commonly understood and is not used in a technical sense, the court need not give any sua sponte instruction as to its meaning." (*People v. Rodriguez* (2002) 28 Cal.4th 543, 546–547.)

As used by section 803, corroboration is not used in a technical sense. As the jury was instructed that before it could convict defendant of the charge in count four, it must find "independent evidence that clearly and convincingly corroborates [Y.'s] allegations," it would have understood the corroborating evidence must (1) corroborate

15

her allegation of sexual assault and (2) could not come from her. The jury was properly instructed concerning the need for corroboration.

C. *Ineffective Assistance of Counsel*

Lastly, defendant argues that if we find defendant forfeited the issues addressed in sections A and B, *ante*, by failing to object, then he received ineffective assistance of counsel, requiring reversal of count four. Because we decided those issues on their merits, there is no need to address the issue of counsel's alleged effectiveness for failing to object to the instructions.

### III

### DISPOSITION

The judgment is affirmed.

MOORE, ACTING P. J.

WE CONCUR:

ARONSON, J.

THOMPSON, J.

16