(Slip Opinion) OCTOBER TERM, 2012 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## SMITH *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 11–8976.  Argued November 6, 2012—Decided January 9, 2013

Petitioner Smith claimed that conspiracy charges brought against him for his role in an illegal drug business, see 21 U. S. C. §846 and 18 U. S. C. §1962(d), were barred by 18 U. S. C. §3282's 5-year statute of limitations.  The District Court instructed the jury to convict Smith of each conspiracy count if the Government had proved beyond a reasonable doubt that the conspiracies existed, that Smith was a member of those conspiracies, and that the conspiracies continued within the applicable statute-of-limitations period.  As to the affirmative defense of withdrawal from the conspiracy, the court instructed the jury that once the Government proved that Smith was a member of the conspiracy, Smith had the burden to prove withdrawal outside the statute of limitations by a preponderance of the evidence.  Smith was convicted, and the D. C. Circuit affirmed.

*Held*: A defendant bears the burden of proving a defense of withdrawal. Pp. 3–8.

   (a) Allocating to the defendant the burden of proving withdrawal does not violate the Due Process Clause.  Unless an affirmative defense negates an element of the crime, the Government has no constitutional duty to overcome the defense beyond a reasonable doubt. See *Dixon* v. *United States*, 548 U. S. 1, 6.  Withdrawal does not negate an element of the conspiracy crimes charged here, but instead presupposes that the defendant committed the offense.  Withdrawal terminates a defendant's liability for his co-conspirators' postwithdrawal acts, but he remains guilty of conspiracy.

   Withdrawal that occurs beyond the statute-of-limitations period provides a complete defense to prosecution, but does not render the underlying conduct noncriminal.  Thus, while union of withdrawal with a statute-of-limitations defense can free a defendant of criminal

liability, it does not place upon the prosecution a constitutional re-sponsibility to prove that he did not withdraw. As with other affirm-ative defenses, the burden is on him. Pp. 3–6.

(b) Although Congress may assign the Government the burden of proving the nonexistence of withdrawal, it did not do so here. Be-cause Congress did not address the burden of proof for withdrawal in 21 U. S. C. §846 or 18 U. S. C. §1962(d), it is presumed that Congress intended to preserve the common-law rule that affirmative defenses are for the defendant to prove. *Dixon, supra,* at 13–14. The analysis does not change when withdrawal is the basis for a statute-of-limitations defense. In that circumstance, the Government need only prove that the conspiracy continued past the statute-of-limitations period. A conspiracy continues until it is terminated or, as to a par-ticular defendant, until that defendant withdraws. And the burden of establishing withdrawal rests upon the defendant. Pp. 6–8.

651 F. 3d 30, affirmed.

SCALIA, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 11–8976

_____

## CALVIN SMITH, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

[January 9, 2013]

JUSTICE SCALIA delivered the opinion of the Court.

Upon joining a criminal conspiracy, a defendant's membership in the ongoing unlawful scheme continues until he withdraws. A defendant who withdraws outside the relevant statute-of-limitations period has a complete defense to prosecution. We consider whether, when the defendant produces some evidence supporting such a defense, the Government must prove beyond a reasonable doubt that he did not withdraw outside the statute-of-limitations period.

## I

Petitioner Calvin Smith was indicted for crimes connected to his role in an organization that distributed cocaine, crack cocaine, heroin, and marijuana in Washington, D. C., for about a decade. The 158-count indictment charged Smith and 16 alleged co-conspirators with conspiring to run, and actually running, an illegal drug business, as well as with committing acts of violence, including 31 murders, to further their goals. Smith was tried alongside five codefendants. A jury of the United States District Court for the District of Columbia convicted him of (1) conspiracy to distribute narcotics and to possess narcotics

with the intent to distribute them, in violation of 21 U. S. C. §846; (2) Racketeer Influenced and Corrupt Organizations Act (RICO) conspiracy, in violation of 18 U. S. C. §1962(d); (3) murder in connection with a continuing criminal enterprise, in violation of 21 U. S. C. §848(e)(1)(A); and (4) four counts of murder while armed, in violation of D. C. Code §§22–2401 and 22–3202 (1996).[1]

At issue here are Smith's conspiracy convictions. Before trial, Smith moved to dismiss the conspiracy counts as barred by the applicable 5-year statute of limitations, 18 U. S. C. §3282, because he had spent the last six years of the charged conspiracies in prison for a felony conviction. The court denied his motion and Smith renewed his statute-of-limitations defense at trial. In the final jury charge, the court instructed the jury to convict Smith of each conspiracy count if the Government had proved beyond a reasonable doubt that the conspiracies existed, that Smith was a member of those conspiracies, *and* that the conspiracies "continued in existence within five years" before the indictment. App. 289a, 300a.

After it began deliberations, the jury asked the court what to do in the event that a defendant withdrew from the conspiracies outside the relevant limitations period.[2] Smith had not yet raised an affirmative defense of withdrawal, so the court for the first time instructed the jury on the defense. The court explained that "[t]he relevant date for purposes of determining the statute of limitations

---

[1] On appeal, the D. C. Circuit remanded two of the murder counts for the District Court to conduct an evidentiary hearing regarding whether Smith received ineffective assistance of counsel as to those convictions. *United States* v. *Moore*, 651 F. 3d 30, 89 (2011) (*per curiam*).

[2] The note to the judge inquired: "'If we find that the Narcotics or RICO conspiracies continued after the relevant date under the statute of limitations, but that a particular defendant left the conspiracy before the relevant date under the statute of limitations, must we find that defendant not guilty?'" App. 174a.

is the date, if any, on which a conspiracy concludes or a date on which that defendant withdrew from that conspiracy." *Id.*, at 328a. It defined withdrawal as "affirmative acts inconsistent with the goals of the conspiracy" that "were communicated to the defendant's coconspirators in a manner reasonably calculated to reach those conspirators." "Withdrawal," the court instructed, "must be unequivocal." *Ibid.* Over the defense's objection, the court told the jury that "[o]nce the government has proven that a defendant was a member of a conspiracy, the burden is on the defendant to prove withdrawal from a conspiracy by a preponderance of the evidence." *Ibid.* The jury then convicted Smith of the conspiracy crimes.

As relevant here, the Court of Appeals affirmed Smith's conspiracy convictions. Recognizing that the Circuits are divided on which party bears the burden of proving or disproving a defense of withdrawal prior to the limitations period, the court concluded that the defendant bears the burden of proof and that such a disposition does not violate the Due Process Clause. *United States* v. *Moore*, 651 F. 3d 30, 89–90 (CADC 2011) (*per curiam*). We granted certiorari. 567 U. S. \_\_\_ (2012).

## II

Petitioner's claim lies at the intersection of a withdrawal defense and a statute-of-limitations defense. He asserts that once he presented evidence that he ended his membership in the conspiracy prior to the statute-of-limitations period, it became the Government's burden to prove that his individual participation in the conspiracy persisted within the applicable five-year window. This position draws support neither from the Constitution (as discussed in this Part II), nor from the conspiracy and limitations statutes at issue (as discussed in Part III, *infra*). Establishing individual withdrawal was a burden that rested firmly on the defendant regardless of when the

purported withdrawal took place.

Allocating to a defendant the burden of proving withdrawal does not violate the Due Process Clause. While the Government must prove beyond a reasonable doubt "every fact necessary to constitute the crime with which [the defendant] is charged," *In re Winship*, 397 U. S. 358, 364 (1970), "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required," *Patterson* v. *New York*, 432 U. S. 197, 210 (1977). The State is foreclosed from shifting the burden of proof to the defendant only "when an affirmative defense *does* negate an element of the crime." *Martin* v. *Ohio*, 480 U. S. 228, 237 (1987) (Powell, J., dissenting). Where instead it "excuse[s] conduct that would otherwise be punishable," but "does not controvert any of the elements of the offense itself," the Government has no constitutional duty to overcome the defense beyond a reasonable doubt. *Dixon* v. *United States*, 548 U. S. 1, 6 (2006).

Withdrawal does not negate an element of the conspiracy crimes charged here. The essence of conspiracy is "the combination of minds in an unlawful purpose." *United States* v. *Hirsch*, 100 U. S. 33, 34 (1879). To convict a defendant of narcotics or RICO conspiracy, the Government must prove beyond a reasonable doubt that two or more people agreed to commit a crime covered by the specific conspiracy statute (that a conspiracy existed) and that the defendant knowingly and willfully participated in the agreement (that he was a member of the conspiracy).[3]

───────────

[3] Narcotics conspiracy under 21 U. S. C. §846 criminalizes "conspir[ing] to commit any offense" under the Controlled Substances Act, including the knowing distribution of, or possession with intent to distribute, controlled substances, §841(a)(1). Section 1962(d) of Title 18 makes it unlawful to "conspire to violate" RICO, which makes it unlawful, among other things, "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the

Far from contradicting an element of the offense, withdrawal presupposes that the defendant committed the offense. Withdrawal achieves more modest ends than exoneration. Since conspiracy is a continuing offense, *United States* v. *Kissel*, 218 U. S. 601, 610 (1910), a defendant who has joined a conspiracy continues to violate the law "through every moment of [the conspiracy's] existence," *Hyde* v. *United States*, 225 U. S. 347, 369 (1912), and he becomes responsible for the acts of his co-conspirators in pursuit of their common plot, *Pinkerton* v. *United States*, 328 U. S. 640, 646 (1946). Withdrawal terminates the defendant's liability for postwithdrawal acts of his co-conspirators, but he remains guilty of conspiracy.

Withdrawal also starts the clock running on the time within which the defendant may be prosecuted, and provides a complete defense when the withdrawal occurs beyond the applicable statute-of-limitations period.[4] A complete defense, however, is not necessarily one that establishes the defendant's innocence. For example, we have held that although self-defense may entirely excuse or justify aggravated murder, "the elements of aggravated murder and self-defense [do not] overlap in the sense that evidence to prove the latter will often tend to negate the former." *Martin*, *supra*, at 234; see *Leland* v. *Oregon*, 343 U. S. 790, 794–796 (1952) (same for insanity defense). Likewise, although the statute of limitations may inhibit

———————

conduct of such enterprise's affairs through a pattern of racketeering activity," §1962(c).

[4] The conspiracy statutes at issue here do not contain their own limitations periods, but are governed by §3282(a), which provides: "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." At the time petitioner was indicted, §3282 contained no subsections; what was the full text of the section is now subsection (a).

prosecution, it does not render the underlying conduct noncriminal. Commission of the crime *within the statute-of-limitations period* is not an element of the conspiracy offense. See *United States* v. *Cook*, 17 Wall. 168, 180 (1872). The Government need not allege the time of the offense in the indictment, *id.*, at 179–180, and it is up to the defendant to raise the limitations defense, *Biddinger* v. *Commissioner of Police of City of New York*, 245 U. S. 128, 135 (1917). A statute-of-limitations defense does not call the criminality of the defendant's conduct into question, but rather reflects a policy judgment by the legislature that the lapse of time may render criminal acts ill suited for prosecution. See, *e.g., Toussie* v. *United States*, 397 U. S. 112, 114–115 (1970). Thus, although union of withdrawal with a statute-of-limitations defense can free the defendant of criminal liability, it does not place upon the prosecution a constitutional responsibility to prove that he did not withdraw. As with other affirmative defenses, the burden is on him.

## III

Of course, Congress may choose to assign the Government the burden of proving the nonexistence of withdrawal, even if that is not constitutionally required. It did not do so here. "[T]he common-law rule was that affirmative defenses . . . were matters for the defendant to prove." *Martin*, *supra*, at 235; see 4 W. Blackstone, Commentaries on the Laws of England 201 (1769). Because Congress did not address in 21 U. S. C. §846 or 18 U. S. C. §1962(d) the burden of proof for withdrawal, we presume that Congress intended to preserve the common-law rule. *Dixon*, 548 U. S., at 13–14.

That Congress left the traditional burden of proof undisturbed is both practical and fair. "'[W]here the facts with regard to an issue lie peculiarly in the knowledge of a party,'" that party is best situated to bear the burden of

proof. *Id.,* at 9. On the matter of withdrawal, the informational asymmetry heavily favors the defendant. Passive nonparticipation in the continuing scheme is not enough to sever the meeting of minds that constitutes the conspiracy. "[T]o avert a continuing criminality" there must be "affirmative action . . . to disavow or defeat the purpose" of the conspiracy. *Hyde*, *supra,* at 369. The defendant knows what steps, if any, he took to dissociate from his confederates. He can testify to his act of withdrawal or direct the court to other evidence substantiating his claim.[5] It would be nearly impossible for the Government to prove the negative that an act of withdrawal never happened. See 9 J. Wigmore, Evidence §2486, p. 288 (J. Chadbourn rev. 1981) ("It is often said that the burden is upon the *party having in form the affirmative allegation*"). Witnesses with the primary power to refute a withdrawal defense will often be beyond the Government's reach: The defendant's co-conspirators are likely to invoke their right against self-incrimination rather than explain their unlawful association with him.

Here again, the analysis does not change when withdrawal is the basis for a statute-of-limitations defense. To be sure, we have held that the Government must prove the time of the conspiracy offense if a statute-of-limitations defense is raised. *Grunewald* v. *United States*, 353 U. S. 391, 396 (1957). But the Government satisfied that burden here when it proved that the conspiracy continued past the statute-of-limitations period. For the offense in these conspiracy prosecutions was not the initial act of agreement, but the banding-together against the law effected by that act, which continues until termination of

————

[5] Here, Smith introduced a stipulation of his dates spent incarcerated, as well as "testimonial evidence showing that he was no longer a member of the charged conspiracies during his incarceration." Brief for Petitioner 3. The jury found that this did not establish by a preponderance of the evidence an affirmative act of withdrawal.

the conspiracy or, as to a particular defendant, until that defendant's withdrawal. And as we have discussed, the burden of establishing that withdrawal rests upon the defendant.

Petitioner's claim that assertion of a statute-of-limitations defense shifts that burden is incompatible with the established proposition that a defendant's membership in the conspiracy, and his responsibility for its acts, endures even if he is entirely *inactive* after joining it. ("As he has started evil forces he must withdraw his support from them or incur the guilt of their continuance." *Hyde*, 225 U. S., at 369–370.) For as a practical matter, the only way the Government would be able to establish a failure to withdraw would be to show active participation in the conspiracy during the limitations period.

\* \* \*

Having joined forces to achieve collectively more evil than he could accomplish alone, Smith tied his fate to that of the group. His individual change of heart (assuming it occurred) could not put the conspiracy genie back in the bottle. We punish him for the havoc wreaked by the unlawful scheme, whether or not he remained actively involved. It is his withdrawal that must be active, and it was his burden to show that.

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*