**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3916
_____

UNITED STATES OF AMERICA

v.

ERNESTO IVAN LAZO-RODRIGUEZ,
a/k/a Daniel Mancero

ERNESTO IVAN LAZO-RODRIGUEZ,
                                        Appellant
_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Crim. No. 2:12-cr-00228)
District Judge: Honorable Mark R. Hornak
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 14, 2014
_____

Before: SMITH, VANASKIE, and SHWARTZ, *Circuit Judges*.

(Opinion Filed: June 19, 2014)
_____

OPINION
_____

VANASKIE, *Circuit Judge*.

Appellant Ernesto Ivan Lazo-Rodriguez ("Lazo-Rodriguez") entered a conditional

plea of guilty to two counts of making a false statement under oath in a matter related to

naturalization ("naturalization fraud") in violation of 18 U.S.C. § 1015(a), and one count of unlawful reentry, in violation of 8 U.S.C. § 1326. He now appeals from the District Court's denial of his motion to dismiss the charge of unlawful reentry based on the five-year statute of limitations. *See* 18 U.S.C. § 3282(a).[1] We conclude that the limitations period was tolled by Lazo-Rodriguez's active concealment of his deportation history. We will therefore affirm the District Court's judgment.

I.

Because we write primarily for the parties, we will recount only the facts essential to our discussion. In 1993, Lazo-Rodriguez, then 16 years old, migrated to the United States from El Salvador. Shortly thereafter, he became a lawful permanent resident, pursuant to which the Government obtained a copy of his fingerprints.

In 1995, Lazo-Rodriguez committed a gunpoint robbery in Texas and was arrested by local authorities. He falsely identified himself to police as "Daniel Mancero," and claimed to be a Mexican citizen without legal immigration status. Texas collected his fingerprints under the name "Daniel Mancero" and forwarded the results to the FBI. Lazo-Rodriguez pleaded guilty to aggravated robbery, after which he was sentenced, as

---

[1] In pertinent part, the statute states, "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282(a).

Daniel Mancero, to five years' imprisonment. The Immigration and Naturalization Service ("INS") lodged two detainers for "Mancero" with the Texas Department of Criminal Justice, resulting in deportation proceedings, further fingerprinting, and ultimately an order of deportation in 1997. Throughout this process, Lazo-Rodriguez maintained his false identity and provided a host of false supporting details. He was deported in June 2000.

At some point within the next few years, Lazo-Rodriguez illegally reentered the United States under his true name—which, having no criminal record associated with it, did not trigger INS scrutiny at the time of his border crossing. When his lawful permanent resident status expired in early 2004, Lazo-Rodriguez filed an application with INS to renew that status, which was approved in September 2004. Again he submitted a fingerprint from his right index finger, but that print was not matched against the FBI's print database or against that maintained by the INS itself.

In 2012, Lazo-Rodriguez applied for United States citizenship—a process which required yet another round of fingerprinting. On this occasion, the results were at last compared against the FBI database, leading INS officials to the realization that Ernesto Ivan Lazo-Rodriguez, an appropriately credentialed El Salvadoran immigrant with no criminal record, was the same person as Daniel Mancero, a deported Mexican felon who never had legal immigration status to begin with. Lazo-Rodriguez denied these

3

allegations in a sworn interview.

On August 22, 2012, a federal grand jury in the Western District of Pennsylvania indicted Lazo-Rodriguez on two counts of naturalization fraud, in violation of 18 U.S.C. § 1015(a), and one count of being found in the United States after having previously been deported, in violation of 8 U.S.C. § 1326.[2] Lazo-Rodriguez moved to dismiss the unlawful reentry count on limitations grounds, arguing that the United States had actual

---

[2] Section 1326 states, in pertinent part:

Subject to subsection (b) of this section, any alien who--

(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

(2) enters, attempts to enter, *or is at any time found in*, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

8 U.S.C. § 1326(a) (emphasis added). Like the parties, we will at times refer to the offense at issue in this case as a "found in" violation of § 1326, as distinguished from violations of the same subsection detected at the time of actual or attempted reentry.

4

and constructive knowledge that he was the same person as Daniel Mancero in 2004, more than five years prior to his indictment. The District Court held an evidentiary hearing and thereafter denied the motion to dismiss in a detailed written opinion. (App. 1–9.) Lazo-Rodriguez entered a conditional plea of guilty and received three concurrent sentences of twenty-four months' imprisonment. He filed a timely notice of appeal.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. Where the defendant challenges a district court's denial of a motion to dismiss, we review de novo the district court's legal conclusions and review factual findings for clear error. *See United States v. Huet*, 665 F.3d 588, 594 (3d Cir. 2012).

## III.

The Government bears the burden of proving that it indicted the defendant within the appropriate limitations period. *See United States v. Smith*, 133 S. Ct. 714, 721 (2013); *United States v. Hankin*, 607 F.2d 611, 612 (3d Cir. 1979).[3] In this case, the Government must prove that it commenced the prosecution on the "found in" charge

---

[3] Although we lack controlling precedent on this point, uncontroverted persuasive authority suggests that proof in this regard must be made by a preponderance of the evidence. *See, e.g.*, *United States v. Gonsalves*, 675 F.2d 1050, 1054 (9th Cir. 1982).

within five years of when Lazo-Rodriguez was first found in the United States after his deportation. The primary question presented here is whether the Government may be charged with constructive knowledge of the illegal reentry of an alien who has been deported under an assumed name when he presents himself under his true name in his initial encounter with the Government after reentry into the United States.

We first addressed the application of the statute of limitations to a "found in" violation of § 1326 in *United States v. DiSantillo*, 615 F.2d 128 (3d Cir. 1980). In that case, a previously deported defendant presented himself, under the same name, at an authorized port of entry and was mistakenly granted a visa. Applying what the parties here refer to as the "constructive knowledge doctrine," we held that so long as INS "knew of [the defendant's] entry and could have, through the exercise of diligence typical of law enforcement authorities, discovered his violation at that time," the limitations period would begin running at the time of reentry, rather than upon actual discovery of the offense. *DiSantillo*, 615 F.2d at 135. In dicta, however, we also recognized that in cases of "surreptitious" reentry by the defendant, i.e., where the defendant crossed the border other than by announcing himself at a "recognized INS port of entry," *id.* at 135, the statute of limitations should be tolled until "[the defendant's] presence is first noted by the immigration authorities." *Id.* at 137.

Several years later, in *United States v. Lennon*, 372 F.3d 535 (3d Cir. 2004), we

6

considered a case in which the defendant, having been deported, illegally reentered the United States by presenting a fictitious name at an authorized port of entry. Immigration authorities were alerted to the illegal reentry seven years later, after the defendant had accrued a string of criminal convictions across several states. Under those circumstances, we declined to impute constructive knowledge of the defendant's violation of § 1326 to immigration authorities, citing the fact that the defendant had "affirmatively concealed her identity." *Lennon*, 372 F.3d at 541. We explained that a contrary holding "would actually favor the illegal entrants who affirmatively conceal their identities over those who honestly use their own names." *Id.*

To summarize, we applied the constructive knowledge doctrine in *DiSantillo* to the straightforward reentry of a previously deported defendant who sought reentry under the same name—an act which, as we recognized in *Lennon*, gave the government "sufficient notice of the alien's presence in the United States to bear the burden of the running of the statute of limitations against it." *Id.* at 541. In *Lennon*, by contrast, the defendant's use of an alias to gain illegal reentry rendered application of that same rule unfair.

We conclude that the holdings and logic of *DiSantillo* and *Lennon* dictate the result in this case as well. Whether a previously deported defendant reenters surreptitiously at some crossing other than a recognized point of entry, as we postulated

7

in *DiSantillo*; proffers a fictitious name upon reentry, as occurred in *Lennon*; or adopts a false identity at the time of a prior offense and attendant deportation, only to later return under a different name, as Lazo-Rodriguez did here, that defendant has engaged in an act of affirmative deception. Just as that act impedes the Government's ability to detect a violation of § 1326, so too does it forfeit the right to charge the Government with constructive knowledge of that same violation for purposes of a limitations defense. As recognized by the First Circuit on similar facts, "[t]o hold otherwise would be to reward deceit by the alien and to encourage the withholding of information, and so the corruption of the deportation process." *United States v. DeLeon*, 444 F.3d 41, 52 (1st Cir. 2006).

For these reasons, we agree with the District Court that the Government cannot be charged with constructive knowledge of Lazo-Rodriguez's 2004 illegal reentry. Likewise, we see no evidence that the District Court clearly erred in its factual determination that the Government lacked actual knowledge of Lazo-Rodriguez's offense until after matching his fingerprint records in 2012. (App. 3 n.3, 8–9.) Accordingly, we will affirm the District Court's denial of the motion to dismiss.

IV.

For the aforementioned reasons, we will affirm the District Court's judgment of conviction entered September 20, 2013.

8