

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff - Appellee,<br><br>  v.<br><br>JAMES MILTON WALLIS,<br><br>        Defendant - Appellant. | No. 09-10472<br><br>D.C. No. 2:07-cr-00145-KJD-PAL-3<br><br><br>MEMORANDUM[*] |
| UNITED STATES OF AMERICA,<br><br>        Plaintiff - Appellee,<br><br>  v.<br><br>CHARLES EDWARD GENSEMER,<br><br>        Defendant - Appellant. | No. 09-10502<br><br>D.C. No. 2:07-cr-00145-KJD-PAL-8 |
| UNITED STATES OF AMERICA,<br><br>        Plaintiff - Appellee,<br><br>  v. | No. 09-10503<br><br>D.C. No. 2:07-cr-00145-KJD-PAL-14 |

---

        [*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

ROBERT ALLEN YOUNG,

       Defendant - Appellant.

---

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

v.

KENNETH RUSSELL KRUM,

       Defendant - Appellant.

No. 10-10000

D.C. No. 2:07-cr-00145-KJD-PAL-7

---

UNITED STATES OF AMERICA,

       Plaintiff - Appellee,

v.

MICHAEL WAYNE YOST,

       Defendant - Appellant.

No. 10-10125

D.C. No. 2:07-cr-00145-KJD-PAL-10

Appeal from the United States District Court
for the District of Nevada
Kent J. Dawson, Senior District Judge, Presiding

Argued and Submitted October 19, 2015
San Francisco, California

Before: SILVERMAN and CHRISTEN, Circuit Judges and DUFFY,[**] District Judge.

This is a RICO and drug conspiracy case.  The government charged James Wallis, Charles Gensemer, Robert Young, Kenneth Krum, Michael Yost, and eight others with conspiracy to engage in a racketeer influenced corrupt organization (RICO), violent crimes in aid of racketeering, drug conspiracy, and illegal possession of firearms.  The indictment followed from a multi-year investigation into activities of the Aryan Warriors (AW), a gang that operated in Nevada state prisons.  On appeal, defendants claim the district court committed several errors during the trial and at sentencing that warrant reversal of their convictions or reduction of their sentences.  We have jurisdiction under 28 U.S.C. § 1291.  With one exception, we affirm.[1]

1.  The jury instructions accurately stated the law on RICO conspiracy. Unlike common law conspiracy, which requires that a participant specifically intend the object of the conspiracy be accomplished, RICO conspiracy requires only "that two or more people agreed to commit a[t least two] crime[s] covered by

---

[**]    The Honorable Kevin Thomas Duffy, District Judge for the U.S. District Court for the Southern District of New York, sitting by designation.

[1]    The parties are familiar with the facts, so we do not recount them at length here.

the [RICO] . . . statute (that a conspiracy existed) and that the defendant knowingly and willfully participated in the agreement (that he was a member of the conspiracy)." *Smith v. United States*, 133 S. Ct. 714, 719 (2013); *see also United States v. Christensen*, 801 F.3d 970, 986 (9th Cir. 2015) ("[A] RICO conspiracy under § 1962(d) requires only that the defendant was aware of the essential nature and scope of the enterprise and intended to participate in it." (internal citation omitted)). For this reason, the district judge did not err when it declined to instruct the jury on specific intent. *See United States v. Blinder*, 10 F.3d 1468, 1477 (9th Cir. 1993) (reaching the same conclusion on similar facts).

2. We affirm the district court's denial of Yost's motion for an evidentiary hearing pursuant to *Lafler v. Cooper*. *See* 132 S. Ct. 1376, 1384 (2012) (the right to effective assistance of counsel applies at the plea negotiations stage). We agree with Yost that the district court erred when it found "[w]hether under the sentence already imposed or under the proffered plea agreement, Yost will receive ten years custody," and dismissed Yost's ineffective assistance of counsel (IAC) claim under *Lafler*'s prejudice prong. *Id.* at 1384–85. In fact, Yost's sentence is four years longer than that which the government offered; this four-year difference could be grounds for a finding of prejudice under *Lafler*. *See id.* at 1385. However, consistent with long-standing circuit preference, we decline to entertain Yost's

4

IAC claim on direct appeal.  *United States v. Jeronimo*, 398 F.3d 1149, 1155 (9th Cir. 2005) ("[A]s a general rule, we do not review challenges to the effectiveness of defense counsel on direct appeal."), *overruled on other grounds by United States v. Castillo*, 496 F.3d 947, 957 (9th Cir. 2007) (en banc).  Although there are exceptions to this general rule, none of those exceptions apply here.  *United States v. Rahman*, 642 F.3d 1257, 1259–60 (9th Cir. 2011) (courts may entertain IAC claims on direct appeal if, for example, the "record on appeal is sufficiently developed to permit determination of the issue").  Yost's claim is better presented in a 28 U.S.C. § 2255 proceeding in which the district court can properly develop the record.  *See* 28 U.S.C. § 2255(b) (discussing § 2255's hearing requirement).

Yost's co-defendants' *Lafler* claim is likewise premature on direct appeal, but nothing in this disposition prevents them from raising the issue on collateral review.  *See id.*

3.  We affirm the district court's dismissal of defendants' motion for a new trial pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963).  Withheld evidence about witness Michael Alvarez's work as a confidential informant with the Nevada Department of Corrections would have been cumulative of testimony elicited during direct and cross-examination, and was therefore not "material" under *Brady*.  *See United States v. Rodriguez*, 766 F.3d 970, 989 (9th Cir. 2014).

5

4. The district court did not abuse its discretion when it denied defendants' Federal Rule of Criminal Procedure 33 motion for a new trial based on newly discovered evidence. *See United States v. King*, 735 F.3d 1098, 1108 (9th Cir. 2013) (discussing standard of review). Allegations that Officer Yant "[was] a serial liar known for falsifying affidavits for search warrants" and "Agent Reubart [had] an addiction to prescription pain medication" do not require a new trial because such allegations would have been useful merely to impeach these witnesses. *See United States v. Hinkson*, 585 F.3d 1247, 1264 (9th Cir. 2009) (en banc); *United States v. Harrington*, 410 F.3d 598, 601 (9th Cir. 2005) (absent extreme circumstances not present here, new evidence that would be merely impeaching does not create grounds for a new trial). Defendants' motion for a new trial based on the allegedly fraudulent "Neff Letter" likewise fails: the government disclosed the Neff Letter during discovery, and defendants had time to interview Neff before trial. Thus, "the failure to discover the evidence sooner [was] the result of a lack of diligence on [defendants'] part." *Harrington*, 410 F.3d at 601.[2] Finally, because the district court properly concluded that defendants' showing did not create grounds for a new trial, the court did not abuse its discretion when it

---

[2] Defendants' motion to supplement the record with evidence of Reubart's drug convictions and an affidavit from John Neff is GRANTED. *See* ECF No. 65.

denied defendants' Rule 33 motion without an evidentiary hearing. *See United States v. Lopez*, 762 F.3d 852, 866–67 (9th Cir. 2014).

5. The district court did not err when it admitted dozens of out of court communications as "statements of a coconspirator" under Federal Rule of Evidence 801(d)(2)(E). After reviewing the trial transcript, we are satisfied that each statement admitted by the district court under Rule 801(d)(2)(E) "was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E); *see also United States v. Bowman*, 215 F.3d 951, 960–61 (9th Cir. 2000). If the district court did err when admitting any of the individual statements, that error was harmless in light of the overwhelming evidence against defendants. *See United States v. Garza*, 980 F.2d 546, 553 (9th Cir. 1992) (Rule 801(d)(2)(E) error subject to harmlessness analysis).

6. Sufficient evidence supports Krum's drug conspiracy conviction. *See* 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(viii). From the evidence presented at trial, a rational juror could conclude the following: Krum knew AW members were producing methamphetamine outside the prison; those individuals were selling drugs to support gang activities; as a lieutenant in the AW, Krum benefitted from this support while incarcerated; and, after his release, Krum agreed to participate and did participate in this drug manufacturing and distribution operation. This is

7

sufficient to support Krum's drug conspiracy conviction. *See United States v. Moe*, 781 F.3d 1120, 1124 (9th Cir. 2015) (elements of a drug conspiracy include "(1) an agreement to accomplish an illegal objective, and (2) the intent to commit the underlying offense" (internal citation omitted)); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

7. Finally, with one exception, the district court did not err when it calculated defendants' U.S. Sentencing Guidelines ranges. *United States v. Treadwell*, 593 F.3d 990, 999 (9th Cir. 2010) ("Failure to calculate correctly the Guidelines range . . . constitutes reversible error. . . .").

(a) Wallis.[3] The district court did not abuse its discretion when it elected to run Wallis's federal sentence partially consecutive to his undischarged state sentence. *See United States v. Shouse*, 755 F.3d 1104, 1108 (9th Cir. 2014); *see also* 18 U.S.C. § 3584(a) ("[I]f a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms *may* run concurrently or consecutively. . . ." (emphasis added)). The sentencing judge explained the factors that influenced his decision to run the

---

[3] We GRANT Wallis's motion to supplement the record with evidence of his prior Nevada conviction. *See* ECF No. 65.

federal sentence partially concurrent to the state sentence, and his explanation was sufficient under our sentencing law.

(b) Gensemer.  Although the district court likely erred by designating Gensemer a career offender based on a prior Nevada burglary conviction, *United States v. Edwards*, 734 F.3d 850, 853–54 (9th Cir. 2013), that error was harmless because it did not increase Gensemer's Guidelines range.  *See* U.S. Sentencing Guidelines Manual § 4B1.1(b) & sentencing table (U.S. Sentencing Comm'n 2007).[4]  Nor did the district court err by failing to resolve a factual dispute before sentencing.

Finally, under any standard of review,[5] the district court did not err when it applied the following enhancements to Gensemer:  U.S. Sentencing Guidelines Manual § 2D1.1(b)(3) (distribution of a controlled substance in a prison) (increase by two levels); and U.S. Sentencing Guidelines Manual § 2D1.1(b)(10)(C)(ii) (risk of harm to the environment) (increase by three levels).  Substantial record evidence shows that Gensemer participated in a drug distribution program one object of

---

[4] All citations are to the 2007 version of the Guidelines.

[5] "There is an intracircuit split as to whether the standard of review for application of the Guidelines to the facts is de novo or abuse of discretion." *United States v. Tanke*, 743 F.3d 1296, 1306 (9th Cir. 2014).  Because the standard of review does not alter the outcome of this appeal, we do not undertake to resolve that conflict here.

which was to smuggle drugs into Nevada prisons. Also, the methamphetamine lab that Gensemer ran for at least four years—and in which police found precursor chemicals that would yield more than 850 grams of methamphetamine—was located in a residential neighborhood. U.S. Sentencing Guidelines Manual § 2D1.1(b)(10)(C)(ii) & cmt. n.20 (discussing factors to consider for imposition of this enhancement).

(c) Krum. Krum's claim that the Sixth Amendment prohibited the district court from increasing Krum's Guidelines Range based on a drug amount larger than that found by the jury is foreclosed by circuit precedent. *United States v. Mercado*, 474 F.3d 654, 657 (9th Cir. 2007) ("[T]he district court could constitutionally consider the acquitted conduct" so long as that conduct is established by a preponderance of the evidence). And record evidence supports the district court's decision to hold Krum responsible for 200–350 grams of methamphetamine. The jury found Krum "Guilty of Drug Conspiracy as charged in Count Ten of the Superseding Indictment," and sufficient evidence supports this conviction. Krum's roommate, Kory Crossman, sold between 200 and 350 grams of methamphetamine to a government informant as part of this drug conspiracy. Krum lived with Kory Crossman at the Pacific Terrace house where officers seized evidence of the drug conspiracy, and trial testimony established that Krum and

10

Crossman worked together to facilitate the AW's street program. This evidence is sufficient to support the district court's express finding that the "amount of methamphetamine that was the subject of the conspiracy was reasonably foreseeable" to Krum. *See United States v. Reyes*, 772 F.3d 1152, 1157 (9th Cir. 2014) (a sentencing court properly attributes to defendant the acts of his coconspirators as long as it finds those acts were: (1) reasonably foreseeable to defendant, and (2) done "in furtherance of the jointly undertaken criminal activity"); *see also United States v. Kilby*, 443 F.3d 1135, 1142 (9th Cir. 2006) (coming to the same conclusion on similar facts).

The district court did not err when it imposed the following enhancements on Krum: U.S. Sentencing Guidelines Manual § 2D1.1(b)(10)(C)(ii) (risk of harm to the environment) (increase by three levels); and U.S. Sentencing Guidelines Manual § 2D1.1(b)(1) (firearms enhancement) (increase by two levels). Krum worked with Gensemer to facilitate the AW street program, and witnesses saw him at a residential methamphetamine lab where officers seized dangerous precursors to methamphetamine. Trial witnesses also identified Krum as a methamphetamine cook associated with the AW: "And how [did you know] . . . that Kenny Krum was cooking methamphetamine?" A: "From his own mouth." Krum was observed participating in the cooking process at least one time at the Helm Street house.

11

Based on this evidence, the district court did not err in finding that ongoing drug production at a methamphetamine lab in a residential Las Vegas community was foreseeable to Krum and done in furtherance of the drug conspiracy. *See* U.S. Sentencing Guidelines Manual § 1B1.3(a)(1)(B). Also, Government witness Michael Calabrese testified that Krum sold him a .357 pistol when the two were "cookin' and . . . usin' meth" together. This testimony establishes that Krum possessed a gun, and it does not suggest the weapon was unconnected to the offense. *See* U.S. Sentencing Guidelines Manual § 2D1.1(b)(1) cmt. n.3 (noting that this "adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense").

Nevertheless, the district court did err when it increased Krum's offense level by two points after finding Krum to be "an organizer, leader, manager, or supervisor in any criminal activity." *See* U.S. Sentencing Guidelines Manual § 3B1.1 (aggravating role enhancement). Because the record does not support the conclusion that Krum had "some degree of control or organizational authority over *others*," *United States v. Bonilla–Guizar*, 729 F.3d 1179, 1186 (9th Cir. 2013) (internal citation omitted), imposition of this enhancement was improper. In light of this error, we vacate Krum's sentence and remand for resentencing.

(d) Yost. Yost's claim that the district court violated his Sixth Amendment rights when it used acquitted conduct to increase his Guidelines range is foreclosed by circuit precedent. *Mercado*, 474 F.3d at 657.

Yost joins Gensemer in objecting to the district court's imposition of the "harm to the environment" enhancement, but Yost does not explain how the district court erred when it applied this enhancement to him. Thus, for the reasons outlined above relating to Gensemer, we affirm the district court's application of § 2D1.1(b)(10)(C)(ii) to Yost.

(e) Young. The district court did not err when it used Young's Nevada battery-by-a-prisoner-in-lawful-custody conviction, Nev. Rev. Stat. § 200.481, as a predicate to impose the "career offender" provision in the Guidelines. *See* U.S. Sentencing Guidelines Manual § 4B1.1 (defining "career offender"). The record makes clear that the conduct underlying Young's RICO conviction was his extortion of Michael Alvarez, not his battery of Scott Irvin. Thus, there is no risk that the district court "double counted" Young's battery-by-a-prisoner conviction by relying on it to apply the § 4B1.1 enhancement.

Finally, the district court did not abuse its discretion when it declined to reduce Young's sentence under U.S. Sentencing Guidelines Manual § 3E1.1(a)

(acceptance of responsibility).  Young neither pleaded guilty nor "clearly demonstrate[d] acceptance of responsibility" at sentencing.  *See id.*

In sum, we **AFFIRM** each defendants' convictions; **AFFIRM** each defendants' sentence with the exception of Krum's; and **VACATE** and **REMAND** Krum's sentence for resentencing.