MARTIN, Circuit Judge,
concurring in part and dissenting in part:
I agree with almost all of the Majority’s opinion. On the issue of Mr. Bergman’s conspiracy convictions, however, I read this circuit’s precedent to require a holding that Mr. Bergman withdrew from the conspiracy more than five years before he was charged with that crime. Since this is beyond the period of limitations, I understand that Mr. Bergman’s conspiracy convictions are due to be vacated, as a matter of law.
*1074 Mr. Bergman resigned from ATC in 2008. He was not indicted until 2014. Our precedent says that resignation is sufficient to constitute withdrawal from a conspiracy. And because Mr. Bergman withdrew outside of the five-year statute of limitations, withdrawal is a complete defense as a matter of law. The Majority misreads our precedent and now imposes a new requirement. The Majority opinion requires undisputed evidence of voluntary conduct in order to effectively withdraw from a conspiracy in this circuit. Because this new requirement is not faithful to our precedent, I cannot fully join the Majority’s opinion.
. I.
Withdrawal is an affirmative defense for which Mr. Bergman bears the burden of proof, and which he must carry by a preponderance of the evidence. Smith v. United States, 568 U.S. 106, 133 S.Ct. 714, 719-20 & n.5, 184 L.Ed.2d 570 (2013). It is a “complete defense when the withdrawal occurs beyond the applicable statute-of-limitations period.” Id. at 719. The statute of limitations here is five years. See 18 U.S.C. § 3282(a). Mr. Bergman resigned in 2008 and was not charged until 2014. So if he effectively withdrew in 2008, then his participation in the conspiracy was beyond the reach of the limitations period and his convictions must be vacated.
Our circuit precedent requires Mr. Bergman to show: “(1) that he has taken affirmative steps, inconsistent with the objectives of the conspiracy, to disavow or to defeat the objectives of the conspiracy; and (2) that he made a reasonable effort to communicate those acts to his co-conspirators or that he disclosed the scheme to law enforcement authorities.” United States v. Starrett, 55 F.3d 1525, 1550 (11th Cir. 1995). There is no dispute that Mr. Bergman communicated his resignation to his co-conspirators in this case. He told them and mailed them a written resignation letter.
The only question, then, is whether the first prong of our circuit’s withdrawal test was met as a matter of law. In order to satisfy the first prong of the withdrawal test, the defendant must show “repudiation” by some affirmative step. See United States v. Dabbs, 134 F.3d 1071, 1083 (11th Cir. 1998). “A mere cessation of activity in the conspiracy is not sufficient to establish withdrawal.” United States v. Finestone, 816 F.2d 583, 589 (11th Cir. 1987). The Majority characterizes Mr. Bergman’s actions as a mere cessation of participation. Maj. Op. at 1064-65, 1066. But this Court has said that “[rjesignation from the conspiring business has frequently been held to constitute effective withdrawal.” Morton’s Mkt., Inc. v. Gustafson’s Dairy, Inc., 198 F.3d 823, 839 (11th Cir. 1999), amended in part 211 F.3d 1224 (11th Cir. 2000). Indeed, in Morton’s Market, this Court opined that “[a] conspirator unquestionably disavows the conspiracy ... when he resigns his employment” or “permanently sever[s] his employment relationship.” Id. (quotation omitted and alteration adopted). So long as “[t]he conspirator’s break with the other conspirators [was] both clean and permanent,” and the co-conspirators are notified of it, withdrawal is effective in this circuit. Id.
II.
The Majority holds that the manner in which Mr. Bergman left ATC created a factual dispute for the jury to decide. But this does not comport with our precedent. Our caselaw says that choosing to resign is enough to withdraw from a conspiracy as a matter of law. Although there was indeed conflicting testimony about the circumstances of Mr. Bergman’s departure, everyone agrees, at a minimum, that Mr. *1075 Bergman chose to resign. Neither the contrary arguments of the government nor those relied upon by the Majority are persuasive.
The government argues because Mr. Bergman was asked to resign, the jury could have inferred “ATC did not know in 2008 that Bergman would no longer lend his services to perpetuate the fraud.” Although credibility determinations are indeed left to the jury, see United States v. Flores, 572 F.3d 1254, 1263 (11th Cir. 2009), there is nothing in the record that the jury could have relied on to support the government’s assertion. No one from ATC, or anywhere else, testified that they thought Mr. Bergman might return to the conspiracy.
The Majority has articulated a new theory upon which to affirm Mr. Bergman’s conviction. It points to Ms. Valera’s testimony that ATC gave Mr. Bergman the opportunity to resign, saying this creates a jury question. Because Ms. Valera’s statement conflicted with Mr. Bergman’s testimony about whether he chose to resign on his own or chose to resign after being asked to, so goes the Majority’s logic, the jury was free to choose between these alternatives. Maj. Op. at 1064-65.
But the result is the same either way. Mr. Bergman chose to resign. The Majority itself recognizes that Ms. Valera testified “it was customary at [ATC] to give employees that you wanted to terminate an opportunity to resign before they were fired.” Maj. Op. at 1058 (emphasis added). So even under Ms. Valera’s version of events, Mr. Bergman had a choice before him. He could resign or be fired. He made his choice voluntarily, resulting in the affirmative step that Mr. Bergman took to withdraw. The Majority says that “Bergman ceased participation because Valera gave him no choice.” Maj. Op. at 1066. But the Majority’s own statement of the facts, which is taken in the light most favorable to the government, recognizes the very choice, or “opportunity,” that Ms. Valera gave to Mr. Bergman. Id. at 1058. In this way, the Majority ignores the reality it highlights.
Applying our circuit’s precedent, it seems clear as a matter of law that Mr. Bergman took an affirmative step, inconsistent with the conspiracy, to defeat it— he resigned. See Starrett, 55 F.3d at 1550; Morton’s Market, 198 F.3d at 839. He also communicated this affirmative step to his co-conspirators by telling them he resigned and then mailing them a written resignation letter. See id. The Majority’s version of events acknowledges the truth of this.
⅜ ⅜ ⅜ ⅜ ⅜ i{i ⅜
The Majority points to two cases to support its decision to affirm Mr. Bergman’s sentence. In Morton’s Market, this Court evaluated whether a dairy company had withdrawn from a milk price-fixing conspiracy by selling its dairy. 198 F.3d at 826-27. The issue, we said, was “whether [the company’s] sale of its dairy, without more, effectively withdrew it from the milk price-fixing conspiracy, or whether some further affirmative step was required to end its liability.” Id. at 839. We recognized “the law has given effect to a conspirator’s abandonment of the conspiracy only where the conspirator can demonstrate that he retired from the business, severed all ties to the business, and deprived the remaining conspirator group of the services which he provided to the conspiracy.” Id.
The Morton’s Market panel said “Resignation from the conspiring business has frequently been held to constitute effective withdrawal,” and then analyzed whether the dairy company’s actions reached that level. See id. It reasoned that after selling the dairy, the company “did nothing more *1076 to assist or participate in the price-fixing activities of the other dairies.” Id. And because the media reported the sale, it was communicated to the co-conspirators that “from that time on, [the company] would not lend its services to the conspiracy.” Id. On those facts, our Court concluded the dairy company “did effectively withdraw from the price-fixing conspiracy upon the sale of its dairy.” Id.
The Majority is quite right that Morton’s Market controls the outcome of this case. But it requires the opposite result. Just like with the dairy company, after his resignation Mr. Bergman “did nothing more to assist or participate” in the conspiracy. And he did far more than just rely on the media to communicate this to his co-conspirators. He resigned and even sent in a written resignation letter. The panel in Morton’s Market could not have been more clear that resignation is sufficient to constitute withdrawal in this circuit. And nowhere does the decision distinguish between “types” of resignation — that is, being asked to resign or coming up with the idea on one’s own. In fact, resignation was the panel’s gold standard in determining whether the dairy company had effectively withdrawn from a business conspiracy.
Although the Majority cites the holding of Morton’s Market, it does not apply it. It says the Morton’s Market holding was that an owner’s “sale of its entire business and exit from the dairy business constituted withdrawal.” Maj. Op. at 1064. Although the Majority goes deep into the facts of Morton’s Market, it never explains why the legal reasoning of the opinion does not control here. Morton’s Market held that withdrawal was effective as a matter of law when an owner severed ties to the conspiracy and the co-conspirators “knew that from that time on” the owner would no longer “lend its services to the conspiracy.” 198 F.3d at 839. I find nothing convincing in the Majority’s explanation for why the same result does not follow in Mr. Bergman’s case. The statement that “[a]ll we say here” is that it’s best left to the jury under the circumstances simply does not explain the failure to apply our circuit’s precedent. Maj. Op. at 1065.
The Majority also points to United States v. Arias, 431 F.3d 1327 (11th Cir. 2005), saying that Mr. Bergman’s case “is more like Arias” than Morton’s Market anyway. Maj. Op. at 1065. But Arias addressed an entirely different issue than the one presented here. Arias was about whether there was sufficient evidence to require a jury instruction on withdrawal, not whether a defendant withdrew as a matter of law. See id. at 1339-42. And the inquiry in Arias was more fact intensive and therefore appropriate for a jury. The defendant in Arias never formally resigned — he simply stopped seeing patients in a Medicare fraud scheme and told an insurance company. Id. The Majority points out that the defendant in Arias deserved a jury instruction about withdrawal and therefore had his conviction vacated. Maj. Op. at 1063-64, 1065. But then it reasons that because of this, Mr. Bergman cannot win on an issue the panel in Arias never even addressed. This result is hard to explain, and impossible for me to accept.
III.
The Majority’s ruling today is not faithful to our precedent. Instead, the Majority seems to have ignored our circuit’s test for withdrawal and abandoned our two-prong test. The Majority has imposed a new, third requirement: undisputed voluntariness. We all agree that the result in Mr. Bergman’s case is controlled by Morton’s Market, the law of this circuit. See United States v. Smith, 122 F.3d 1355, 1359 (11th Cir. 1997) (per curiam) (“Under the prior panel precedent rule, we are bound by *1077 earlier panel holdings, ... unless and until they are overruled en banc or by the Supreme Court.”)- The Majority tries to distinguish Morton’s Market by pointing out that in that case, a business was sold, but here, Mr. Bergman “only resigned under threat of firing.” Maj. Op. at 1065-66. The Majority argues that therefore it was Ms. Valera who took the affirmative step, not Mr. Bergman. Id. at 1065.
Yet I have found no case in this circuit requiring an exploration of the defendant’s motive in taking an affirmative step and concluding that such conduct was voluntary. Nor have I located precedent that requires the step be taken alone. There are certainly no cases that tell us what these new requirements from the Majority mean. Indeed, adding this voluntariness requirement creates fact questions in every case with a defendant who withdrew from criminal conduct: Was the affirmative step truly voluntary? Was the withdrawal taken under threat, coercion, or duress? Did the defendant withdraw alone or did anyone else influence his decision to do so? Finally on this point, I can find no cases that distinguish being asked to resign from resigning on one’s own accord. Yet the Majority requires proof of that distinction here. Maj. Op. at 1065. On this record, Mr. Bergman has met our circuit’s longstanding test for withdrawing from a conspiracy. His convictions for conspiracy are therefore due to be vacated, and I dissent to the Majority’s failure to do so.
IV.
As a final note, I add that nothing in the Majority’s opinion should be construed to in any way overrule or abrogate our precedent in Morton’s Market. Indeed I take the Majority’s words at face value: “[Njothing herein should be read as holding that an employee’s resignation cannot be an effective withdrawal.” Maj. Op. at 1065.