**NOT FOR PUBLICATION**

FILED

UNITED STATES COURT OF APPEALS

FEB 26 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 19-50291 |
| Plaintiff-Appellee, | |
| v. | D.C. No. 2:14-cr-00329-ODW-4 |
| MARINA R. MERINO, AKA Mare, AKA Mari, AKA Marta, AKA Mary, AKA Marina M. Merino, AKA Ricardina Merino, AKA Ricardina M. Merino, AKA Marina Ramos, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted February 5, 2021
Pasadena, California

Before: GOULD, OWENS, and VANDYKE, Circuit Judges.

Defendant-Appellant Marina Merino ("Merino") appeals from her

convictions following a jury trial for conspiracy to commit health care fraud, in

violation of 18 U.S.C. § 1349, and eight counts of health care fraud, in violation of

---

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

18 U.S.C. § 1347. Merino worked as a patient recruiter, or "marketer," for co-defendant Glazer's medical clinic. The government alleged that she conspired with co-defendants Robert Glazer, Angela Avetisyan, and Ashot Minasyan to fraudulently bill Medicare. After a guilty verdict, Merino was sentenced to 21 months' imprisonment and three years of supervised release. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we reverse Merino's convictions.

Merino challenges the sufficiency of the evidence used to convict her on the basis that she did not know about the fraudulent billing scheme organized by Glazer and Avetisyan. We review challenges to the sufficiency of the evidence *de novo*. *United States v. Green*, 592 F.3d 1057, 1065 (9th Cir. 2010). We determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

1. Based on the sparse evidence of Merino's guilt presented, no rational juror could have concluded that the government proved conspiracy to commit health care fraud beyond a reasonable doubt. The government must prove that Merino agreed to pursue the "same criminal objective" as her co-conspirators. *Salinas v. United States*, 522 U.S. 52, 63 (1997). We have explained that it is

proper to draw inferences of the existence of an agreement "if there be concert of action, all the parties working together understandingly, with *a single design* for the accomplishment of a common purpose." *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996) (emphasis added). We have noted, too, that "mere association with members of a conspiracy or knowledge of the conspiracy, 'without an intention and agreement to accomplish a specific illegal objective, is not sufficient to make one a conspirator.'" *Id.* (quoting *United States v. Melchor-Lopez*, 627 F.2d 886, 891 (9th Cir. 1980)).

The object of the conspiracy, as alleged by the government, was a scheme to fraudulently bill Medicare for services not rendered or services that are not "medically necessary." Here, the evidence of a *single* design was insufficient because the trial record indicates only that Merino knew she was accepting kickbacks—which is in violation of the Title 42 anti-kickback statutes—for recruiting patients to Glazer's clinic, not that she knew Glazer was billing Medicare fraudulently.[1] Even if Merino had the same knowledge as the government's cooperating witness, Zoila O'Brien—who was also a patient

---

[1] The lack of record evidence proving Merino's knowledge of the specific alleged conspiracy is compounded by the government's decision not to bring a charge under the Title 42 anti-kickback statutes. A defendant can be guilty of violating these anti-kickback laws if she "knowingly and willfully" receives payment for recruiting patients, even if all the services ultimately billed to Medicare are legitimately provided and "medically necessary." *See* 42 U.S.C. § 1320a-7b.

recruiter for Glazer—the government does not provide sufficient evidence that O'Brien knew Glazer's clinic was not providing legitimate patient services, despite billing Medicare for such services. Evidence of Merino's "cover-up scheme," such as the lies she told to Agent Li—that her job consisted only of handing out flyers and occasionally cleaning the offices, and that she was paid per patient or per hour—is also insufficient to demonstrate her intent to defraud. Merino's deceptive behavior is consistent with that of an individual who believes herself to be engaged in an unlawful kickback scheme, and not enough to sustain her fraud convictions. Also, the government's contention that Merino, a 62-year-old woman who had no medical training, would have known which services were "medically unnecessary" is belied by the testimony of its Medicare witness, Investigator Person. Person's testimony indicates that detailed and complex regulations govern whether a service is "medically necessary," and even Medicare providers reasonably disagree about what those regulations require. Without evidence sufficient to prove Merino's knowledge of the fraudulent billing scheme, the government fails to carry its burden that Merino agreed to pursue the specific object of the conspiracy. *See Smith v. United States*, 568 U.S. 106, 110 (2013).

2. For similar reasons, the government also fails to adequately support Merino's convictions for the eight substantive counts of health care fraud under § 1347(a). To do so, the government must prove beyond a reasonable doubt that

4

Merino "knowingly and willfully execute[d], or attempte[d] to execute, a scheme . . . to defraud any health care benefit program." 18 U.S.C. § 1347(a). Because Merino is not a health care provider, she can be held liable for health care fraud in one of two ways: (1) under a *Pinkerton* theory, if Merino is determined to be a co-conspirator; or (2) as an aider and abettor. Pursuant to *Pinkerton v. United States*, 328 U.S. 640 (1946), a co-conspirator is "criminally liable for reasonably foreseeable overt acts committed by others in furtherance of the conspiracy they have joined, whether they were aware of them or not." *United States v. Hernandez-Orellana*, 539 F.3d 994, 1007 (9th Cir. 2008). Under 18 U.S.C. § 2, a defendant can be found guilty of aiding and abetting if she "associated with the criminal venture, participated in it, and sought, by [her] actions, to make it a success." *United States v. Boykin*, 785 F.3d 1352, 1359 (9th Cir. 2015).

Because the jury returned a general verdict, we cannot know under which theory the jury convicted Merino. But under either theory of liability, on the evidence presented no rational juror could have concluded that Merino agreed to further the object of the conspiracy for which she was charged, *see Melchor-Lopez*, 627 F.2d at 891, or that she had the specific intent to facilitate fraudulent billing, rather than a "different or lesser offense," *see, e.g.*, *Rosemond v. United States*, 572 U.S. 65, 76 (2014).

**REVERSED and REMANDED for entry of a judgment of acquittal.**[2]

---

[2] Because insufficient evidence supports Merino's convictions and we reverse her convictions, we need not address Merino's additional arguments for reversal.